# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROBINSON v. CRENSHAW.

### JANUARY 19th, 1888.

1. PURCHASERS FOR VALUE WITHOUT NOTICE— *Constructive notice.*—Whatever puts purchasers on inquiry which should discover want of authority in vendor, is constructive and sufficient notice. *Lamar* v. *Hale,* 79 Va., 147.

2. TRUSTEES— *Ultra vires—Notice—Case at bar.*—Where decree, affirmed on appeal here, held sale of lands by trustee to be *ultra vires* and null, and *c. q. t.* entitled to restitution thereof, subsequent grantee of vendee thereof with notice of the trust, can take no more than his grantor had; and where the land was *pendente lite* condemned by a city and a railroad company and the damages paid over to such grantee, the damages remain a charge on the land until paid to the *c. q. t.*

3. APPEAL— *Parties—Rehearing.*—Where this court has decided against the right of certain persons to become parties, upon remand those persons cannot come into the court below as parties and litigate anew the questions already determined.

4. CONDEMNATION OF LANDS— *Title— Payment of damages.*—Where corporation has had land condemned for its purposes, and doubt exists as to title, it can acquire clear title only by paying the damages into court according to Code 1873, ch. 56, §16, so that the parties in interest may be convened before disposal thereof.

Appeal from decree of chancery court of city of Richmond, rendered January 9th, 1884, in six causes heard together, wherein the appellants, Georgianna L. Robinson, by, &c., and George C., Lucy C., Edward T., Mary C.; and Rebecca Robinson, infant children of said G. L. and C. A. Robinson, by, &c., and C. A. Robinson, trustee of said G. L. Robinson and her said children, are parties plaintiffs or defendants, and James

R. Crenshaw, Peter W. Grubbs, Thomas Ellett, S. H. Hawes, the city of Richmond, the Richmond and Danville Railroad Company, Virginia Ellett, Louisa L. Ellett, and said Thomas Ellett as administrator of Virginia Ann Ellett, are parties plaintiffs or defendants, and appellees here. Opinion states the case.

*John Howard*, for the appellants.

*Christian & Christian, C. V. Meredith*, and *H. H. Marshall*, for the appellees.

HINTON, J., delivered the opinion of the court.

This is a sequel to the case of *Ellett & Crenshaw* v. *Robinson*, which was twice before this court, but has never been reported. In that case, the decree of the circuit court of Fredericksburg, of August 24, 1875, the decree appealed from, was affirmed by this court first at the January term, 1880, the decision being that of a unanimous court, and then, after a rehearing at the January term, 1882, by a divided court, Judge Moncure being prevented by ill health from taking part in the decision. The object of the original suit was to set aside, as null and void, a transaction had on the 11th day of August, 1868, between C. A. Robinson, trustee in a deed of marriage settlement, entered into between himself and wife on the 6th day of September, 1866, and one J. R. Crenshaw, by which, in alleged execution of a power of sale for reinvestment given in the deed of settlement, said trustee purchased of said Crenshaw a tract of land lying in the county of Henrico, called "West View," and certain personalty, for which he received a deed from Crenshaw and wife, and for which he paid in part by a sale of part of the settled estate, and for the residue gave his notes as trustee, secured by a deed of trust upon the purchased land, and further, to require restitution of the settled

estate, or of the proceeds thereof, which had been diverted, under color of this transaction, from the enjoyment of the *cestui que trust*, the wife and children of the trustee. The decree of the circuit court adjudges the entire contract of purchase of West View and its personalty by Robinson, trustee, null and void; fixes a lien on West View for the proceeds of the Main-street lot, which had been paid over to Crenshaw; directs a reconveyance of the "Dock lot," which had been transferred to Crenshaw in exchange for one of the void notes of C. A. Robinson, trustee; and ordered an account to be taken to ascertain what amount of the proceeds of sale of the trust estate, under the deed of marriage settlement, came into the possession of the defendant, James R. Crenshaw, and also the value of the rents and profits of the dock, from the time actual possession of West View was given to Thomas Ellett, one of the defendants in that suit. The language of the decree is as follows: " * * * The court is of the opinion that the purchase of the real and personal estate by the trustee, C. A. Robinson, from the defendant, James R. Crenshaw, for a sum greater in amount than the value of the whole trust estate, and involving the execution of the deed of trust to Grubbs and Roberts, in the proceedings mentioned to secure the notes given for the deferred instalments of the purchase money, was not authorized by the powers granted to the said Robinson, trustee, under the deed of marriage settlement of the 6th September, 1866. That the application of the trust subject, in satisfaction in part of the purchase money, and the putting the same in peril by the execution of the said deed of trust, were breaches of trust on the part of the trustee, Robinson, of which Crenshaw had notice and became a participant therein, and that the whole transaction, so far as it was intended to affect the trust subject and the interest of the *cestui que trust*, whatever may have been the integrity and good faith of the parties thereto, which there is nothing in the record to impeach, was illegal and void; and the court is further of the opinion

that the trust subjects and proceeds thereof, which came into the possession of the defendant, Crenshaw, remained in his hands still subject to the trusts of the deed of marriage settlement, and constituted a lien on West View in favor of the *cestui que trust,* prior in equity to that reserved by Crenshaw for the unpaid purchase money, and that the defendant, Ellett, being fully affected with notice, occupies no better position than Crenshaw; and doth therefore adjudge, order, and decree that the defendant, James R. Crenshaw, do within sixty days from the entering this decree, reconvey to C. A. Robinson, trustee, the lot situate in the city of Richmond, conveyed to him by the said Robinson, by the deed of the 6th December, 1869, to be held by the said trustee, subject to the trusts declared in the deed of marriage settlement. It is further ordered that James Pleasants, who is hereby appointed a special commissioner for that purpose, do inquire, ascertain, and report to the court, what amount of the proceeds of sale of the trust estate, under the deed of marriage settlement aforesaid, came into the possession of the defendant, James R. Crenshaw, and also the value of the rents and profits of the lot conveyed to the said Crenshaw by the said Robinson, trustee, herein-before reconveyed, from the time the actual possession of West View was given to the defendant, Thomas Ellett; the court being of the opinion that the use and occupation of West View should set off the claim for interest and rents and profits due to the *cestui qui trust* during its existence." This decree was affirmed by a divided court and the effect of that judgment of affirmance was not only to adjudicate and finally determine the principles of the cause in accordance with the views of the lower court, between the parties to the record in that court and their privies, but it is also adjudged that Thomas Ellett should not have been made a party to the suit in his representative character of administrator of Mrs. Ann Virginia Ellett, and that the appellees, Virginia and Louisa Ellett, in the pending appeal, were not necessary parties to the suit;

for, in the petition for a rehearing addressed to this court, it
was urged, as one of the grounds for reversing the decree of
the lower court, that they were necessary parties to the suit,
and the refusal to set aside that decree was an adjudication
against the right of these persons to become parties to the suit,
and relitigate the questions which had been determined by the
lower court, which is plainly what the Misses Ellett were
allowed to do when the cause went back to the circuit court.

After the mandate of affirmance of this court had reached
the court below, and Commissioner Pleasants had proceeded
to execute the decree of August 24, 1875, which had thus been
affirmed, it was discovered that Crenshaw, who had been di-
rected to re-convey to Robinson the dock lot, had sold it to his
brother Lewis Crenshaw, and that Lewis had conveyed it to
one of the appellees, S. H. Hawes, and that by some arrange-
ment between Hawes and the city of Richmond, and the Rich-
mond & Danville railroad company, part of said lot had been
condemned for public uses, and the money therefor, under a
decree of the court, paid to Hawes; whereupon Mrs. Robin-
son and her infant children filed an amended and supplemental
bill against the original parties to the suit and S. H. Hawes,
the city of Richmond, and the Richmond & Danville railroad
company. The object of this bill, while enforcing the lien
which had been adjudicated in favor of Mrs. Robinson and her
children, was to require the said Hawes to deliver possession
of the dock lot, and to recover the amount of the damages if
the lot had been properly condemned. The bill charged that
Hawes, at the time of his purchase, had notice of the trusts of
the marriage settlement and of the transaction of August 11,
1868, and that if he did not have actual notice of the pendency
of the suit, that he had the means and opportunity of knowl-
edge afforded him by an examination of the records of the
county court of Henrico, where were recorded the deeds in-
volved in the transaction of August 11, 1868, through which
alone he could trace the title to the said dock lot; and more-

over that Hawes had, at the time of his purchase, full notice
of the marriage settlement and of the transaction of August
11, 1868, which sufficiently informed him of the rights of the
complainants in the premises, and made him a trustee of their
property, with which, having such knowledge, he had volun-
tarily intermeddled. Hawes answered the bill and denied
actual notice of the pendency of the suit, but admitted that he
had notice of the marriage settlement and of the deeds August
11, 1868, through which his title was traced. The railroad
company and the city of Richmond also answered the bill,
claiming that the alleged condemnation of the dock lot was
valid, and stating the amount of damages paid to Hawes.

In March, 1883, Thomas Ellett, as administrator of Virginia
Ann Ellett, was permitted to file a petition to be treated as a
cross-bill, and on the same day Virginia Ellett and Louisa Ellett,
the children of the wife of Thomas Ellett by a former marriage,
and two of the appellees hereinbefore alluded to, were per-
mitted to file their petition, which was also ordered to be
treated as a cross-bill. These petitions were in substance and
effect nothing more than bills of review of the proceedings of
this court, for errors of law on said decree of affirmance, and
the only ground upon which the petitioners claimed to have
such a right was that they were not formal parties to the suit.

The usual proceedings were had, and the judge of the court
then sitting being so situated that he could not act in the case,
by agreement of the parties, John H. Guy was, under the
statute, elected to act as judge in the case. In June, 1884, he
rendered a decree holding first, that G. L. Robinson and her
infant children, the plaintiffs in the amended and supplemental
bill aforesaid, had no right to go against the said S. H. Hawes
or the city of Richmond or the Richmond & Danville railroad
company, or against the property known as the "Dock Lot,"
or any part of it in their hands, but that they are *bona fide* pur-
chasers for value and without notice, of the said lot, and are
entitled to hold the same free and clear from any and all claim

whatever of the said G. L. Robinson and her children, and accordingly dismissed the said amended and supplemental bill as to these parties and as to P. W. Grubbs. It then declares that $8,752 29 of principal is the amount which should be treated as paid by C. A. Robinson, trustee, towards the purchase of West View, that being the whole of the cash payment, and of the first deferred payment for said land. It then dismisses the petition of Thomas Ellett, as administrator of Virginia Ann Ellett, holding that he was bound by the proceedings and decrees theretofore had in these causes, but declares that Virginia Ellett and Louisa Ellett were not bound or affected by the proceedings and decrees had in these causes prior to the filing of their petitions, and overruled the demurrer to their petition. It then held that the transaction for the purchase of West View from J. R. Crenshaw by C. A. Robinson, trustee, was a valid transaction, except so far as it created in favor of the unpaid purchase money a paramount lien on the whole tract of land, and that the conduct of all parties to the said transaction was in perfect good faith, and that to the extent that the said C. A. Robinson, trustee, had invested the trust-estate in said tract, such investment was valid, but that the said trustee had no power to bind any of the trust-estate or to give a lien thereon for the deferred payments on said tract, and that it was not to the interest of the *cestuis que trust* under the marriage settlement of September 6, 1866, nor practicable, if to their interest, to apply their trust-estate to completing the purchase of West View but that it is more just and equitable now to divide said tract, or its proceeds, between the *cestuis que trust* under the marriage settlement, so as to give them on the one hand an interest in or claim upon said tract, or its proceeds, to the extent to which the same has never been paid for by the said C. A. Robinson, trustee. It orders and decrees that the deed from Grubbs to Ellett be set aside and annulled. It then proceeds to declare the respective interest of Virginia and Louisa Ellett, and the *cestuis que trust* under the marriage

settlement, and then directs that John Howard and Frank W. Christian, who are appointed commissioners for the purpose, shall proceed to sell the said land and distribute the proceeds in the proportion and manner specified in the said decree. From this decree Mrs. Robinson and her children and C. A. Robinson, trustee, took this appeal.

It will be perceived at a glance that this decree is utterly at war with the decree of affirmance pronounced by this court on the former appeal. On the former appeal the transaction of the 11th August, 1868, between Crenshaw and Robinson, trustee, was adjudged to be *ultra vires* and absolutely null and void, as an exercise of the power of sale for reinvestment conferred upon the trustee by the marriage settlement, and, in the opinion of the court, the construction of the power then given is binding not only upon the parties to the settlement, but to everybody tracing title, under that settlement, through the exercise of the power. And as Hawes, the city of Richmond, and the Richmond & Danville railroad company all trace their title through what this court has declared to be a void exercise of the power conferred by the settlement, it seems clearly to follow that neither of them could have any valid title to or interest in any part of the settled estate, including herein especially the dock lot. But it is contended, and the decree appealed from so decides, that Hawes was a purchaser for value, without notice of the pending suit, and that therefore the bill should be dismissed as to him. This argument, as counsel for the appellants rightly observes, overlooks the fact that the real ground, upon which Hawes should be held liable, is not that he was a *pendente lite* purchaser, but that it is shown that he had notice of the marriage settlement, and of the transaction of August 11, 1868, involving the deed and deed of trust of that date, through which he claimed title, and upon the validity of which his title depended. As the record shows, he traced his title directly through and from those deeds, as the deed from Robinson to Crenshaw, and from said Crenshaw to

his brother, Lewis Crenshaw, and from Lewis Crenshaw to
Hawes, all of which deeds refer to the deed of August 11,
1868. He must, therefore, be held to have had notice of all
the facts disclosed by those deeds, or to the knowledge of
which anything therein appearing would lead him.  *Woods* v.
*Krebbs*, 30 Gratt., 715; *Lamar* v. *Hale*, 79 Va., 147. That
James R. Crenshaw was bound by the adjudication of this
court, holding the exercise of the power to be absolutely void,
is beyond question, and he therefore got no title to the dock
lot, and if he got no title to the dock lot, he could certainly
convey none to his brother, Lewis Crenshaw, and Lewis Cren-
shaw could convey none to Hawes. Certainly, therefore,
Hawes had no title to the dock lot in question.

As to the claim of the city of Richmond and of the Rich-
mond & Danville railroad company, to hold the dock lot free
from liability for the damages, admitting all that can be said
in favor of the condemnation proceedings, it can stand upon
no higher ground. It being manifest that the damages have
not been paid to the true owners, and that the proceedings for
condemning the land have not been strictly pursued, the land
must stand charge with those damages, with interest from the
28th of March, 1874, the date of the condemnation proceed-
ings, until payment thereof is made to the true owners, and it
must remain charged with the annual rental of $200, fixed by
the commissioner from April 2, 1873, the date of the deed
from Crenshaw to Hawes, up to the date of the condemnation
proceedings. Had the city and railroad desired to acquire
clear title to this property, it should have paid the money dam-
ages into court, according to § 16, ch. 56, Code, so that the par-
ties in interest might have been convened before the court be-
fore it was disposed of, instead of paying it directly to Hawes.
As to the Misses Ellett, as we have seen, their right to litigate
anew the questions involved in this case was determined against
them by the former decree of this court, doubtless for the rea-
son that the court thought they had been fully represented by

Thomas Ellett, whose interest was similar to theirs. But in reality they have no interest whatever in West View, or in the trust property of the settled estate. If they claim as purchasers, they were certainly *pendente lite* purchasers, and bound by the results of the litigation.

For the foregoing reasons, the court is of opinion that the decree complained of is erroneous, and must be reversed, and that the cause must be remanded with directions to dismiss the petition of the Misses Ellett, and to render a decree in conformity with the views herein expressed.

DECREE REVERSED.