# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DAVIES & WIFE V. HUGHES.

### MAY 8th, 1890.

1. ADVANCEMENTS—*Interest.*—Interest cannot be charged upon advancements until final distribution.
2. EXECUTORS—*Rent—Case at bar.*—Testator bequeathed two-thirds of his land to his son and executor, and remainder to the children of his deceased son. Sale to be at executor's discretion. He kept possession and all the profits. The children lived with and served him, with no other compensation than their board. *Held,* executor should be charged with rent for the children's portion.
3. IDEM—*Vendor— Vendee—Case at bar.*—It is well settled that an executor cannot buy at his own sale, the positions of vendor and of vendee being inconsistent; and where, as in the case here, executor is entitled to two-thirds of the land, and sells the whole to his clerk, who does not pay the consideration, but re-sells the land to executor: *held,* the sale is fraudulent and void.
4. IDEM—*Mode of re-sale—Case at bar.*—At the re-sale of said land, it should be started at an upset price to be fixed by the master commissioner at the sum the executor was to pay, diminished by the value of any permanent improvements made by him, and commissions and charges of a re-sale, on a credit of one, two and three years, with interest, the proceeds to be paid into court for distribution.

Appeal from two decrees of circuit court of Gloucester county, rendered respectively May 19, 1885, and June 19, 1888, in the chancery cause wherein William A. Davies and Indiana Davies, his wife, and others, the appellants, were complainants, and Thomas J. Hughes, executor of Thomas Hughes, deceased, and others, were defendants. Opinion states the case.

*Maryus Jones*, for the appellants.

*J. B. Donovan*, for the appellees.

LACY, J., delivered the opinion of the court.

This case is as follows: In the year 1865, Thomas Hughes died, leaving a will, dated October 26, 1865, by which he provided: (1) That all his just debts should be paid. (2) That the appellee, Thomas J. Hughes, his son, named as his executor, should sell all of his real estate and personal property on such terms and at such time as he might deem most advisable for all concerned. (3) He lent to his wife all his property, real and personal, or the sales arising from the said property, during her life, and at her death he gave one-third of the same to the children of a deceased son, John H. Hughes, who are the appellants, after accounting for the sum of $1,450, previously advanced to the said deceased son, John H. Hughes, and the remaining two-thirds of the estate was given to his son, the said executor, Thomas J. Hughes, who is the appellee. Thomas J. Hughes qualified as executor on the 4th day of May, 1868, and settled from time to time his *ex parte* accounts. In March, 1877, the appellants filed their bill to surcharge and falsify the said accounts. New accounts were ordered, the said *ex parte* accounts appearing to have been informal, and not returned and confirmed. Upon the taking of these accounts, it appeared that Thomas J. Hughes had retained possession of the real estate from the death of the widow, in 1868, to November 3, 1869, when he sold the said real estate to his clerk, one Seward, at the price of $6,000, there being no other bidders at the auction of the same, except three persons procured by the said executor to make pretended bids in order to give a show of fairness to the transaction. Seward paid him no money, and on the same day the executor made Seward a deed; and, on the 5th of November, Seward made him a deed for the said

real estate.   The said executor never paid the one-third pur-
chase money of this land to the parties entitled thereto, but
conveyed the same to his sons, along with all his property of
every sort, confessed a judgment in favor of his wife for $3,000,
and a large number of other judgments were recovered against
him in the same year, 1883.   The said Thomas J. Hughes is
also the personal representative of his brother, John H. Hughes,
deceased, the father of the appellants, Charles H. Hughes and
his sisters, Indiana and Florence; and a suit in the name of
Davies and wife against Hughes, having for its object the set-
tlement of the estate of the said John H. Hughes, was heard
along with this, but subsequently dismissed by the court, and
an account ordered of all the estate which came into the hands
of the said executor with which he was properly chargeable.
Distributee accounts were also taken, but subsequently appear
to have been disregarded, and an account returned, with a
report by the commissioner, on the 20th of November, 1882,
by which a balance was found due to the estate of Thomas
Hughes, deceased, of $5,026 40 of principal and $301 58 of
interest, to which exceptions were filed by Thomas J. Hughes,
and on the 20th of May, 1884, the exceptions of Thomas J.
Hughes were sustained by the court, and the report recommit-
ted in conformity with a written opinion stated to have been
filed with the record, and made a part of the decree.   The said
opinion, however, is not in the record.   November 1, 1884,
another account and report were returned by the commissioner,
with exceptions thereto by the plaintiffs.   The court, by the
decree of May 19, 1885, overruled the exceptions to this report,
and confirmed the same.   The plaintiffs thereupon, by leave of
the court, filed an amended bill seeking to set aside the sale of
the land by the executor indirectly to himself as fraudulent.
This bill the court dismissed by decree of June 19, 1888, and
gave costs, whereupon plaintiffs appealed to this court.

The first error assigned, is that, by the said decree of May 19,
1885, confirming the commissioner's report and the account

returned therewith, they are made to pay interest on the above
stated advancement charged against them in the will of Thomas
Hughes.    The next is that Thomas J. Hughes was not charged
with rent for use and occupation of the said farm during the
time he held and used it to their exclusion, before the pre-
tended sale thereof.    The next assignment is that the decree
of June 19, 1888, dismissed their amended bill, and refused to
set aside the fraudulent sale of the real estate by the executor
to himself.

As to the first assignment of error, that the appellants were
required to account for the advancement charged against them
in the will, with interest, it is well settled that interest should
not be charged upon an advancement until final distribution.
This money belonged to the legatees, and not to the estate of
Thomas Hughes.    It must be credited without interest at the
time of final distribution.    The executor is chargeable with
interest on the balance withheld by him.    If it could be other-
wise, the legatee would be thus made a debtor; and under
many circumstances his legacy might be wiped out and extin-
guished by interest upon a sum which in no event could he be
required to pay.    *Barrett* v. *Morris' Ex'ors*, 33 Gratt., 273, and
cases cited.    This rule could be varied only by express provi-
sions in the will to that end.    *Cabells* v. *Puryear*, 27 Gratt., 504.

As to the second assignment of error, that the executor was
not charged with rent for one-third of the farm, we think the
decree is plainly erroneous.    It is true that the appellants lived
upon the farm also, but they had no share of its profits.    They
were made to serve; and, if the evidence is to be believed,
they served a hard task-master, who was more sparing of the
comfort of these children than of his blows bestowed upon
them for any supposed neglect of their work.    Their services
were undoubtedly worth their board, and there is no reason
why the executor should not account to them for the value of
their share which he enjoyed, and which he withheld from
them.    If the will gave him a discretion when to sell, it did

not provide that it should be his entirely, either before or after the sale.

The next assignment of error is as to the action of the court, by its decree of June 19, 1888, refusing to set aside the said fraudulent sale by the executor indirectly to himself. It is well settled that an executor cannot buy at his own sale. The positions of vendor and vendee are inconsistent. If he desired to become the vendee, he could easily have declined the voluntary attitude of vendor. The interposition of Seward and the puffers employed was a fraudulent device. The executor sold and conveyed without receiving a dollar of purchase money, and repurchased without paying a dollar. This was a good deal to be done without the expenditure of a dollar of money, but his trust position sufficed to achieve it. It was a sham sale, and is voidable at the option the *cestuis que trust;* and this rule is not affected by the fact that two-thirds of the proceeds belonged to him. He was still a trustee as to the matter in controversy—the one-third belonging to the appellants. *Staples* v. *Staples*, 24 Gratt., 225; 1 Benj. Sales, p. 31, note 22; Ror. Jud. Sales, 346, 356; 1 Perry, Trusts, secs. 205, 224; *Bailey's Adm'x* v. *Robinson*, 1 Gratt., 4. In the last-named case principles governing the court in such a case are clearly laid down. In that case the court said: "The court is of opinion that the purchase by the executor, Bailey, of the land in the proceedings mentioned, at the sale thereof made by him and his co-executor, was in itself a violation of his duty as a trustee, and an invasion of the rights of his *cestuis que trust*, who are entitled to redress in a court of equity. According to the general rule in such cases, though the sale may have been irregularly and fraudulently conducted, and the property sold for less than its value, the proper mode of relief is not to subject the trustee to payment of the actual value of the land at the time of the sale upon the conjectural estimate of witnesses, but, at the election of the *cestuis que trust*, to direct a re-sale at a proper upset price. A mere depreciation, since the

trustee's purchase, in the market value of the property, arising from a change in prices, does not warrant an exception to this general rule, the more especially in a case like this, in which no depreciation whatever is charged by the complainants in either their original or amended bill. The court is therefore of opinion that the said decree of the circuit court is erroneous in requiring the appellants, the representatives of said Bailey, to retain the said land at the price fixed by the said court, instead of directing a re-sale thereof at a proper upset price, to be ascertained by an account debiting the price at which the land was purchased by said Bailey, with interest thereon, and with any substantial and permanent improvements made by said Bailey on the land since his purchase, and crediting the rents or profits of the land since his purchase, except during the enjoyment thereof by the testator's family. The balance of such account, with the addition thereto of a reasonable allowance for the commission and charges of re-sale, is the sum at which the land on a re-sale should be set up, on a credit of twelve, eighteen and twenty-four months, for equal instalments of the purchase money, with interest on those instalments from day of sale. If the land should not sell for more than the upset price, the purchase heretofore made by said Bailey should in all respects stand confirmed, and the purchase money and interest thereon remaining due after crediting, at the proper dates, any payments made on account thereof, and after also crediting the rents or profits of the land since said Bailey's purchase, during the period of the enjoyment thereof by the testator's family, paid into court for distribution among the appellees, and those claiming under them, according to their respective rights."

The decree complained of must be reversed and annulled, and the cause remanded to the said circuit court for an account of the rents and profits of the said land during its occupancy by this executor; an account of any permanent and substantial improvements made on the said land by the said executor,

Hughes; an account of the purchase price of the said land, with interest thereon from the day of sale to the time of taking the said account (in this case there are no credits for any payments made by the said executor, there having been none); and for a resale of the said land at an upset price, to be fixed by the said account by debiting the price at which the land was purchased by said executor, with interest thereon, and with any substantial and permanent improvements made by said executor, Hughes, on the land, since his purchase, and adding thereto a reasonable allowance for the commissions and charges of resale, upon a credit of one, two, and three years, with interest on these instalments from day of sale, and the proceeds to be paid into court for distribution. Before said distribution, however, an account is to be taken and settled (1) of the transactions of said executor, as such, upon the estate of said Thomas Hughes, charging the said executor with a fair rent for the said farm during his occupation thereof before the sale made by him; (2) an account of his transactions as executor of John H. Hughes, deceased; (3) a proper distributee account with each of the children of the said John H. Hughes, in which he is not to be allowed any charge against the said children for board, that having been once paid by their services rendered to him during their residence with him, and charging the said children each with one-third of the advancement of $1,450 mentioned in the will of Thomas Hughes, without interest. If, however, at the resale, which must be ordered upon the above-stated basis, the land shall bring less than the said upset price, then the sale already made at $6,000 is to stand, and the distribution is to be made upon that basis, with interest to the date of final distribution.

As to the claim that his sons are his vendees, and as such *bona fide* subsequent purchasers for value, without notice, this is negatived by every circumstance in the case. The defect in the title conveyed to them was before their eyes. It lay in the line of their title. The whole appeared upon the deeds under

which their grantor derived his supposed title. They were purchasers with full knowledge of the pendency of the suit in question. These were sufficient to put them upon inquiry. *Coles* v. *Withers,* 33 Gratt., 191; *Lamar* v. *Hale,* 79 Va., 159, and authorities cited in the opinion of Judge Richardson; *Robinson* v. *Crenshaw,* 84 Va., 355; *Hobson* v. *Whitlow,* 80 Va., 788. The said decrees complained of must be reversed and annulled, and the cause remanded to the said circuit court of Gloucester, with the directions to proceed in the cause as above directed, and for the decision of such questions as are not already adjudicated, and for final decree in the cause.

DECREES REVERSED.