**KUEHNER v JOHNSON et**

Ohio Appeals, 2nd Dist, Madison Co

No 148. Decided Dec 23, 1940

Tanner & Tanner, London, for appellee Paul Tyler, Admr. d. b. n.

D. H. Jackman, London, for Oscar Crager.

Frank J. Murray, London, for Edward N. Betts.

## OPINION

### By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of the appeal of Oscar Crager from the judgment of the Court of Common Pleas of Madison County, Ohio.

The factual questions raised under the pleadings are very much involved and may be difficult to understand without a full and careful reading.

Prior to October 1922, John R. Stateler died testate, leaving personal property and a farm of 301.36 acres, located north of Somerford, Madison County, Ohio. The last will and testament of John R. Stateler, after providing in Item I that all his just debts and funeral expenses should be paid by his executor, then in Item II provided in' substance that all the property, both personal and real, be devised and bequeathed to the testator's second cousin, Harley Lloyd Stateler, for and during his natural life only, and after the death of Harley Lloyd Stateler the farm was given to the oldest surviving son, if he should be survived by a son. This Item II contained further alternative provisions as to the disposition of the

property in the event Harley Lloyd Stateler should die leaving no son, and all looking to the expressed intent that the farm remain in the Stateler name, but these alternative provisions are not material at the present time.

Under Item III E. W. Johnson was named as executor to carry out the terms of the will. There were no other dispositive provisions of the will following Item III.

E. W. Johnson was a lawyer and banker, residing in West Jefferson, Madison County, Ohio.

The decedent, John R. Stateler, left debts in an amount greater than the personal estate. The mortgage indebtedness against the farm amounted to $6580.70; and other claims against the estate were between $3000 and $4000.

The executor, E. W. Johnson, commenced an action in the Probate Court to sell the real estate to pay the debts. This proceeding advanced regularly so that on November 25, 1922, the farm was sold, at public auction, to Oscar Crager at his bid price of $21,063.90.

Prior to the issuing of the order of sale and under the order of Probate Court, the executor, E. W. Johnson, executed a bond in regular form, with the plaintiff, Charles F. Kuehner, and one R. D. Sidener, as sureties. Mr. Johnson, the executor, was also the personal attorney of Oscar Crager, and president of the bank with which Crager carried on his business. Prior to the sale Johnson contacted Crager, and suggested that they buy the farm together; that Crager need pay only one-half the purchase price and that Johnson some time in the future would pay the other half, and that the farm would be operated by them as joint owners. Mr. Johnson, the executor, attended to all the details, including the execution of the deed to Mr. Crager as sole owner, at a named consideration of $21,063.90.

On June 16, 1923, Crager gave his check to Johnson, executor, in the sum of $10,592.38, which was cashed on June 18th following. By calculation we find that one-half of the purchase price would be $10,531.95. As to why

Crager's check was $61.43 in excess of the one-half, is not shown, nor is the variance of much, if any, importance.

The purchaser, Crager, took charge of the farm shortly after its purchase and continued to operate the farm as tenant and claimed joint owner with Johnson, until some time in 1936 or 1937. At all times Johnson concealed from all interested parties the private arrangements that he had made with Mr. Crager.

Johnson, the executor, gave Mr. H. L. Stateler, the beneficiary, to understand that the one-half of the purchase price of the farm was secured by an unrecorded mortgage, and annually for about nine years he remitted to Mr. Stateler his check for $631.90 odd cents, which represented 6% on the one-half or $10,531.95. All these checks were cashed. The first was dated March 21, 1924 and the last May 6, 1931. Another check, dated May 9, 1932, made out by Johnson to Stateler, called for $425.00. This difference in amount is apparently explained by a letter of Johnson that he had changed the investment to Government bonds.

Some time in 1933, one of the bondsmen, Charles F. Kuehner, discovered that Johnson, the executor, was a secret purchaser at his own sale of the undivided one-half of the 300 acre farm; and on July 14, 1933, filed his action in the Court of Common Pleas of Madison County, Ohio, against Johnson and Crager, wherein he stated in substance Johnson's appointment and qualification as executor of John R. Stateler's estate; the proceedings instituted in the Probate Court to sell decedent's real estate, consisting of 301.36 acres of land; the execution of the bond under the order of the Probate Court, on which the plaintiff, Charles F. Kuehner, was one of the sureties; and then is set out the following, which we quote in full:

"Plaintiff further says that pretending to act under the order and authority of said court as hereinbefore set out, the said defendant, Edward W. Johnson combined and conspired with

the defendant. Oscar Crager, to purchase said land and retain for himself a one-half interest therein without paying any consideration whatever therefor, and in pursuance to said conspiracy as aforesaid, did make a pretended sale of said land to his co-defendant, Oscar Crager and executed a deed for the entire land to his co-defendant, Oscar Crager, and he, the said Edward W. Johnson, paid no consideration whatever for said land or any interest therein, but allowed and permitted the said Oscar Crager, his co-defendant herein, to have the entire legal title in said land and concealed the fact that he was a part owner thereof from the beneficiaries of said trust."

It is further alleged that the defendant, Oscar Crager, without a legal title to said land, had executed a mortgage and procured money thereon, which had been divided in equal parts between Crager and Johnson. There is a further allegation charging that Crager had full knowledge that Johnson was conveying the property as executor, and that the said Johnson as an individual was retaining for his own use and benefit a one-half interest in said farm; further, that ever since said sale said defendants had operated said farm and received the income, rents and profits therefrom, and that it is now being operated and managed by the defendant, Oscar Crager, and the profits shared in by said E. W. Johnson. It is further alleged that the said E. W. Johnson is wholly insolvent and that aside from the farm and live stock, farm implements and personal property thereon, Oscar Crager has no other property out of which judgment may be satisfied. Further, that if the said Oscar Crager is permitted to retain the legal title to said property, that he will further mortgage or encumber the same. and all of said property will be wholly lost to said estate. The petition also contains the allegation that the co-surety, David Sidener, is, as plaintiff believes, wholly insolvent. Then follows the final allegation that the conveyance by Johnson, as executor, to

the said Oscar Crager for the use and benefit of the said Edward. W. Johnson as an individual be voided, and that said farm is the property of said estate and that Crager and Johnson hold said real estate in trust for the beneficiaries of said trust estate.

The prayer of the petition is that Johnson and Crager be declared to hold said property in trust and ordered to reconvey said land and said trust estate and to account to the executors of said estate for all the rents, profits and issues received from said estate during the time it has been in their possession, management and control. That a receiver be appointed, and that pending final hearing a temporary restraining order issue, restraining each of said defendants from mortgaging, selling or conveying away any of said real estate, and for such other and further relief as the justice and equity of the case may require.

On May 27, 1936, on application of the plaintiff, Paul Tyler, administrator with the will annexed, of John R. Stateler, deceased, was made a party defendant, and leave was granted to file answer. On the same day, to-wit, May 27, 1936, Paul Tyler, as administrator de bonis non with will annexed, duly filed his answer. The first paragraph of the petition alleges that he was appointed as such administrator on October 4, 1933, and that thereupon he qualified and entered upon his duties and still is acting as such administrator.

This answering defendant then further avers that on the 17th day of October, 1933, plaintiff in writing notified him to bring an action as such administrator against Oscar Crager and Edward W. Johnson to recover the real estate claimed to be conveyed on or about May 1, 1933, by Johnson, as executor, to Crager. That in November, 1933, he commenced an action against plaintiff and others in the Common Pleas Court of Madison County, Ohio, in which case he asks judgment against plaintiff and others in the sum of $10,531 95 and that said cause was still pending in said court.

The answering defendant further avers that he has been made a party defendant in the instant action and is in doubt as to his duties under the will of said decedent, and avers that he cannot proceed without the direction of the court. Then follows a full copy of the will, the substance of which has heretofore been stated. Plaintiff again avers that he is in doubt as to whether he is authorized as administrator d. b. n. to bring the suit demanded by plaintiff, press his action against plaintiff and others, or consent to the prayer of the petition.

It is further averred in the answer that Harley Lloyd Stateler, the life tenant mentioned in the will, is living and has one son, Lloyd Stateler, a minor. Further averred that Harley Lloyd Stateler and Lloyd Stateler have such an interest herein that they should be made parties defendant to this action.

The prayer of the answer asks for judgment and direction of the court as to the true construction of said will, and the duties of the administrator d. b. n. in the premises, and that Harley Lloyd Stateler and Lloyd Stateler be made parties defendant, and for all other relief to which he may be entitled.

So far as we are able to discover from the transcript of docket and journal entries, neither Harley Lloyd Stateler nor his son, Lloyd Stateler, a minor, were made parties defendant to this action, nor does it appear that they voluntarily entered their appearance herein.

. On August 9, 1933, Edward N. Betts, was made a party defendant and given leave to move or plead on or before September 15, 1933. This defendant has filed a demurrer to the petition, which was overruled and afterwards filed answer and cross-petition, in which he set up that on January 30, 1933. Oscar Crager and E. W. Johnson executed to him their promissory note in the sum of $3200.00 due five years from date, and that on the same day, for the purpose of securing said note, the said Oscar Crager, unmarried, duly executed and delivered his mortgage deed on the 300 acre farm heretofore referred to.

Oscar Crager filed an answer to the cross-petition of Betts, admitting the allegations of the cross-petition, but further averring that all papers pertaining to said loan were prepared under the direction of Edward W. Johnson, and at the time he, Oscar Crager, believed himself to own the real estate jointly with the said E. W. Johnson; that Edward W. Johnson received one-half of the money obtained from said loan, to-wit, $1600.00.

On August 8, 1933, the defendant, Oscar Crager, through his counsel, filed a special and general demurrer to plaintiff's petition. In substance the demurrer questions the jurisdiction of the court, the legal capacity of the plaintiff to bring the action and that the facts alleged did not constitute a cause of action. On hearing, the demurrer was overruled.

On April 9, 1934, the defendant, Oscar Crager, filed his answer and cross-petition to plaintiff's petition.

The answer sets out in detail the various steps and proceedings through which he became the purchaser of the farm in question.

In the cross-petition, under the first cause of action, the defendant, Crager, alleged in detail his relations with Edward W. Johnson, as his personal attorney and financial adviser, and that he, Crager, purchased the property under an arrangement that Johnson would take one-half the farm and pay one-half of the purchase price, and further, relying upon such representations, without knowledge of any fraudulent or unlawful intent on the part of said executor, said defendant. Crager, carried through the plan, paid his one-half of the purchase price and was informed that he owned one-half of said land and Johnson owned the other half; that he engaged in the operation of said farm with Johnson on a 50-50 plan, sharing expenses and dividing profits; and that said plan was continued until May 1, 1933. That during said time the taxes on said farm were paid in full in the total sum of $3035.42,

which includes payment of February 10, 1931; that one-half of said taxes was paid by the defendant, Crager; that new buildings were built and old buildings repaired; new fences constructed, all of which were paid for jointly by the defendant and Johnson, and which enhanced the value of said property in the sum of $3500.00; that said executor applied the sum of $6580.70 of the purchase money paid by defendant to the payment of the mortgage encumbrance placed on said land by decedent, and that he applied the balance of the money paid, in the sum of $3951.25, to the extinguishment and payment of other valid claims and that said estate has been enriched thereby.

This answering defendant further states that since the commencement of this action Edward W. Johnson has resigned as executor of said Stateler estate, and that one Paul Tyler was on the 4th day of October 1933 appointed administrator de bonis non, with will annexed, by the Probate Court of Madison County, Ohio.

The second cause of action of the cross-petition alleges that on the 16th day of February, 1932, the said Edward W. Johnson and his wife executed and delivered their certain trust deed to the plaintiff, Charles F. Kuehner, by which they conveyed certain described real estate located in Arkansas, containing 1160 acres, and further alleges that the purpose of the trust deed was to secure the said Charles F. Kuehner for any and all obligations as surety for Johnson, and to protect him against Johnson's obligations to the estate.

The prayer of defendant Crager's answer and cross-petition joined in plaintiff's request that the proceedings and sale by E. W. Johnson, executor, be set aside; offers to deliver as the court may require possession of the said premises and to execute the necessary documents and papers; prays that the court find that this defendant has a first and best lien on said premises for the sum of $10,593.38 together with interest at 6% from the 1st day of May, 1923; and the first and best lien on the premises for the sum of $1517.71 as and for taxes

paid; the sum of $1750.00 for enhancement in value and improvements on said premises; or that said land be partitioned and defendant's half set off to him separately; or that he be subrogated to any rights and remedies of plaintiff under the deed of trust set out hereinbefore and for such other and further relief as may be found equitable and proper.

On May 27, 1936, the trial court (Hon. R. L. Gowdy, sitting by special assignment) by consent of all parties to a journalized entry and in the interest of preserving the status during the pendency of the cause, appointed Oscar Crager temporary receiver to operate the farm in the nature of a designated tenancy and one-third of the proceeds from the land to be deposited in the Central National Bank of London, Ohio, to his credit as temporary receiver and to be held subject to the order of the court. On the same day, to-wit, May 27, 1936, the trial court (Judge R. L. Gowdy) decided the cause on plaintiff's petition, answer and cross-petition of Oscar Crager, answer and cross-petition of Edward N. Betts, and the answer of Paul Tyler, administrator of the estate of John R. Stateler, deceased. The defendant, Edward W. Johnson, was in default for answer, although he was served with summons as required by law.

The order of the court was incorporated in duly journalized entry, the pertinent portions of which are herein set out in substance.

It was the finding of the court that the farm sold at executor's sale was purchased by Oscar Crager and the executor, Edward W. Johnson, and that since the purchase of said property by said Crager and Johnson they have been in the sole possession and received the rents and profits therefrom and have incurred certain expenses in connection with the operation of said farm; that the defendant Oscar Crager paid one-half of the consideration for said farm at or about the time of the purchase thereof; that on the 30th day of June, 1933, the defendants, Oscar Crager and Edward W. Johnson, gave

their certain promissory note to the defendant, Edward N. Betts, and secured the payment of said note by mortgage on the land in question, said mortgage being executed by Oscar Crager; that the deed from Edward W. Johnson, as executor, to his co-defendant, Oscar Crager, is void and of no effect and should be set aside; that the defendant, Oscar Crager is entitled to have repaid to him out of a resale of said farm by the administrator with the will annexed and in whom said title is revested, that portion of the purchase price paid by the said Oscar Crager at the time of the purchase of said property from said executor; the said Oscar Crager, however, to account to said estate for all rents and profits received from said farm during the time same has been in his possession and control, with credit allowed against said accounting for any taxes paid by said defendant or his co-defendant, Edward W. Johnson, and any expenses incurred in the upkeep and preservation of said farm during said period of time, but no allowance to be made for any permanent improvements or developments added to such farm during the time said Oscar Crager has been in possession thereof.

The court further finds that Edward N. Betts has a good and valid claim and lien upon any assets found payable to Oscar Crager upon accounting, and that he is entitled to be satisfied first out of said proceeds, if any, before the payment of any of said proceeds to the said Oscar Crager, and if said claim of the said Betts is not paid in full it shall be paid out of the proceeds of said sale of said premises.

It is further ordered, adjudged and decreed that the deed made by Johnson, executor, to Crager, dated June 16, 1933, and recorded in the Recorder's office of Madison County, Ohio, be and the same is hereby set aside and held for naught, and the title to said real estate is revested in the estate of John R. Stateler, deceased, to be disposed of in accordance with the order of the Probate Court of Madison County, Ohio.

It is further ordered that out of the proceeds arising from the sale there shall first be paid to Edward N. Betts out of any balance found due, if any, to Oscar Crager upon the accounting herein directed to be taken, and otherwise to be paid out of the estate.

It is further ordered and decreed that an accounting be taken between the administrator with the will annexed of the estate and the defendant, Oscar Crager to determine the amount owing by the respective parties each to the other, and this court retains jurisdiction for the purpose of taking said accounting. The costs were adjudged against the defendants.

On July 14, 1937, the defendant, Oscar Crager, filed his written statement of account, wherein he charged himself as rental on the 301.36 acres on a cash basis of $2.50 per acre, from March 1, 1923 to March 1, 1936. The items were set out in tabulated form, showing a charge of $735.40 for each year, and interest charged at 6% from each yearly charge to March 1, 1937, making the total charges $14,054.31.

The claimed credits covering some eight and a half pages of typewritten matter, may be classified in general as follows:

First, under date of June 16, 1923, for the amount paid to the executor as consideration for the farm, $10,592.38, and upon which interest was claimed to June 16, 1937, in the sum of $8898.40. Then follows the yearly list of taxes' paid, with interest thereon calculated to June 1, 1937.

Thereafter follow three items, as follows:

| | |
|---|---:|
| October 31, 1925, paid to E. W. Johnson _____$ | 6.50 |
| Interest to June 1, 1937_____ | 4.50 |
| March 13, 1926, paid to E. W. Johnson _____ | 1337.86 |
| Interest to June 1, 1937_____ | 899.69 |
| April 27, 1927, paid to E. W. Johnson _____ | 5.00 |
| Interest to June 1, 1937 _____ | 3.02 |

Then follows a long list of what we might designate miscellaneous credits, being repairs and upkeep on farm, most of the items small, and on none of which is any interest claimed. The total of all credits claimed was $29,-844.57. Striking a balance, the defendant Crager claimed the amount due him was $15,790.26.

On December 4, 1937, the defendant Paul Tyler, administrator de bonis non, filed exceptions to the submitted account of the defendant Oscar Crager.

The exceptions to the account are set out in eight separately stated specifications, and listed as A, B, C, D, E, F, G and H. These exceptions may be summarized as follows:

A, B and C, taken together, make the claim that the amount which Oscar Crager had charged himself as rental for the premises was not adequate; that the charge should have been $5.00 per acre per annum, to-wit, the sum of $19,588.40; that this amount should be charged with interest on each annual rental from the date of its accrual.

D objects to the allowance of the sum of $10,592.38, being the amount paid by Crager to Johnson, executor, as consideration on the farm, for the reason that the sale and purchase were fraudulent. Also objects to the sum claimed as interest.

Specification E, is an alternative to D, that in the event the court should find that Crager was entitled to the credit of $10,592.38 then the interest thereon should be disallowed.

Specification F sets up that exceptor has no means of knowing the amount of taxes, and asks that defendant Crager be placed on proof as to all of these credit items, together with interest.

Specification G denies all knowledge of the item of $1337.86 and interest, claimed to have been paid by Oscar Crager to Johnson.

Specification H asks for the disallowance of items Nos. 123 and 147, for $127.20 and $102.00, respectively. (These two items were for fertilizer claimed to have been purchased by defendant Crager and used on the farm during the years 1926 and 1927).

On February 1, 1938, the account and exceptions thereon came up for hearing before Honorable Marion B. Owen, sitting under assignment in place of Honorable R. L. Gowdy, then deceased. On or about March 28, 1939, defendant Crager filed a supplemental accounting, the first item of which started with the balance due claimed under the original account of $15,790.26, and thereafter follow eight items of amounts paid by E. W. Johnson to H. L. Stateler, the life tenant, under the will of John R. Stateler. These items, together with interest, total $4996.34.

The defendant Paul E. Tyler filed exceptions to this supplemental account.

The finding and judgment of the trial court was journalized July 24, 1940.

The substance of the pertinent portions of the court's journalized entry are as follows:

The exceptions under A, B and C were sustained, and the court found that the reasonable rental value of the property for the term covered in said account, was $3.50 per acre, with interest at 6%.

Branch D of the exceptions was overruled in part, it being held that the accountant was entitled to the credit in the sum of $10,593.38, but that he was not entitled to interest in the sum of $8898.40, as covered under Branch E of the exceptions.

Branch F of the exceptions relative to claimed taxes and interest was overruled.

Branch G of said exceptions, covering the item of $1337.86 and interest in the sum of $889.69, the first item being the amount claimed to have been paid by defendant Crager to Johnson, was sustained.

Branch H of the exceptions, referring to two items for fertilizer, was likewise sustained.

The exceptions to the supplemental account were sustained as to all its items.

The entry then follows with specific findings as to amounts, as follows:

1. The rental value of the farm at $3.50 per acre, with interest at 6% to

June 1, 1937, making a total charge of $19,676.95.

2. That the total amount of all credits, after deleting the items for which exceptions have been sustained, with proper interest allowed, amounts to the total sum of $18,479.42, leaving a balance due from said accountant to the estate of John R. Stateler, the sum of $1197.53.

Thereafter follows entry of judgment against Oscar Crager in favor of the estate of John R. Stateler in the sum of $1197.53, with interest at 6% from June 1, 1937.

This is the final order from which error is prosecuted to this court.

The bill of exceptions contains all the evidence taken on hearing on exceptions to the account.

Appellant Crager's assignments of error are set out under four specifications, as follows:

"1. It was prejudicially against the weight of the evidence for the court to find that the rental value of the land in question for the period of time involved was $3.50 per acre.

2. That it was contrary to law for the court to disallow interest on the money which Oscar Crager paid when he purchased the farm at the executor's sale, as claimed in Item 2 of the credits of his account.

3. The court unlawfully sustained exceptions as to the item of $1337.86 and the interest thereon, listed as credits 45 and 44 in the original account.

4. That it was contrary to law and against the weight of the evidence for the court to sustain all of the exceptions against Oscar Crager's supplemental account."

We will now take up these several assignments in the same order as listed in the brief of counsel for appellant:

First Assignment relative to rental value on the land:

This is purely a factual question and this court will not molest the finding of the trial court, unless it should shock our conscience to permit it to remain.

Counsel for appellee, in his brief, with earnestness urges that the court should have made a finding of a larger amount.

We have carefully read the record and from the composite of all witnesses are led to the conclusion that the farm could properly be designated as classified between a medium and poor farm. The soil is white clay, and we think it is a matter of common knowledge that white clay is a very poor soil. There is very little drainage, although some witnesses say that the farm has natural drainage. It is the experience of the writer of this opinion that there is no such thing as natural drainage on white clay soil. About 175 acres of the farm is tillable; the rest of the farm is in blue grass pasture, with about 20 acres of this pasture in timber. It would be our reaction from all the evidence that if any change was to be made it would be a reduction downward, rather than upward. However, we do not feel that we would be warranted in molesting the finding of the court on the question of cash rental value.

Assignment of Error No. 1 will therefore be overruled.

Under the second assignment it is urged that the court was in error in disallowing interest on the money which Oscar Crager paid when he purchased the farm at the executor's sale.

Counsel for appellee, in his brief, argues not only the correctness of the court's finding in disallowing interest, but further argues that the court was in error in allowing as a claim the money paid out by Crager on the purchase price.

The appellee did not file a cross-appeal, and hence we do not think that we would be authorized to give consideration to this claim of appellee, although in some particulars items in the account may be so connected that an adverse ruling as to some items might demand a readjustment of items allowed. If it were possible to give consideration to the claim of appellee

that appellant should not be given credit for the item designated as purchase money, we would have no difficulty in finding against appellee on this question.

It is our conclusion that the appellant was not guilty of any actual fraud, but nothing more than constructive fraud. Under actual fraud it is necessary that the wrong doer has an intent to do a wrong, and in carrying such intent into execution he does injury or damage.

Constructive fraud may exist where there is no intent to do a wrong, but the act in contemplation of law is a wrong which makes the contract voidable at the instance of the other contracting party.

We have no difficulty in determining that the defendant, Oscar Crager, had no intent to do wrong, and did not have actual knowledge that his arrangements with the executor through which they were jointly buying the farm in question was an act prohibited under the law. The actual, intentional wrong was on the part of Johnson, and Crager was drawn in because he can not be heard to say that he did not know the law. This is a fiction well recognized, but nevertheless binding on Crager.

Coming now to the question of interest on the amount paid by Crager, we likewise have no difficulty in determining that interest should be allowed, and we think the authorities, not only in Ohio but in other jurisdictions, support this legal conclusion. We are unable to follow the conclusions of the trial court wherein he makes the statement in his opinion "that he finds no reason in equity or justice why Crager should profit by his own fraud, or why decedent's estate should be penalized by payment of interest on the fraudulent down payment of purchase price;" and also the further statement "the court can not subscribe to the doctrine which would allow a fraudulent purchaser both principal and interest on the purchase price."

We could very readily follow the reasoning of the trial court if the appellant Crager was not charged rent for the entire period of his occupancy. In this particular he would be in no different position than a stranger who rented the farm on a cash rental basis at $3.50 per acre for the entire acreage. It seems to us that the finding and judgment of the trial court presents a manifest injustice to the appellant Crager. In effect he would not only lose the money he advanced on the purchase price; but after being charged with the total rental and paying the total taxes for this period of years, he would still owe the estate $1197.53. It is not the policy of the law in cases of constructive fraud to charge the offending party with exemplary damages. He is obligated to return the status quo so far as possible. Before the sale the farm was subject to debt, and Crager's money paid to the executor, went to pay off this debt; where as before the sale the farm was encumbered, it is now unencumbered, unless the accounting shows a finding in favor of Crager, in which case there would be a lien in that amount.

Under a sale such as this, where constructive fraud is patent, the proper parties have an option of remedies. They could either accept the sale as made, collect the balance on the purchase price, and require a proper accounting by the executor; or, in the alternative, they could proceed to have the conveyance set aside. This is the holding of the Circuit Court in the case of **Harrison v Heckler, et al., 6 C. C. 443.** We particularly refer to page 446 of the opinion, wherein reference is made to the opinion of Judge Ranney, **3 Oh St 507.**

The rule is found quoted also in the case of **Gahanna Bank Company et v Miesse, Admr. et al 41 Oh Ap 316,** and page 320 of the opinion. On the above cited page of the opinion, Judge Kunkle, rendering the opinion of the court,

quotes from the opinion of Judge Owen of the Supreme Court, **45 Oh St 512:**

"It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the cestui que trust to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale."

The Superior Court of Cincinnati, in the case of Roll et v Riddle et, held under a similar situation to the instant case that a sale which would be held fraudulent by reason of fiduciary relation would be set aside, and that the purchaser was entitled to the return of his or her money, together with interest.

This case, affirmed by the Supreme Court, will be found in the reported case under the same title, **24 Oh St p. 572.**

In Ruling Case Law, Volume 11, page 362, §428, we find the following.

"When a sale is set aside because the personal representative was the purchaser, he is entitled to relief in a court of equity to the extent of being allowed a lien on the property for any advances of a reasonable nature which he may have made, provided he has not been guilty of actual fraud. He is also entitled to reimbursement as to sums spent for repairs and permanent improvements, as well as to repayment of the purchase money, **with interest,** subject to an accounting for the rents and profits." (Emphasis ours).

L. R. A., annotated, 1918 B, pages 40 and 49, in the last paragraph of Subdivision 8, appears the following:

"By the weight of authorities, he is also entitled to interest on such advances."

In the earlier portion of paragraph 8 are listed the various advancements, among which is the statement that the purchaser under the unlawful sale "should be reimbursed for his advances made on the purchase price of the property."

We are likewise referred to cases in other jurisdictions, some of which but not all, we have examined. We will not make detailed reference, but merely cite the cases:

Buckles v Lafferty, 32 Robinson (Va.), 292; (40 American Decisions 752);
Price v Winter, 15 Florida 66;
Evelmesser v Evelmesser, 99 Ills. **541;**
Doe ex dem Harkrider v Harvey, **3** Indiana, 104;
Culver v Culver, 11 N. J. Equity, 215;
Bailey v Robinson, 1 Gratt. (Va.) 4; (42 American Decisions 540);
Davies v Hughes, 86 Va. 909; (11 S. E. 488);
Michoud v Girod, 4 Howard, U. S. 503; (11 Lawyers' Edition 1076).

Contra the argument that interest should be allowed, counsel for appellee cites to us the case of **Gahanna Bank Company et v Miesse, 41 Oh Ap 316,** and very earnestly argues that this case is authority not only for the disallowing of interest, but also the advancement on the purchase price.

This case was decided in 1931 by the Court of Appeals of Franklin County. Kunkle, J., delivering the opinion. We think a careful examination of this case will very clearly demonstrate that neither reimbursement nor interest was involved.

The action was instituted by two creditors against the estate, in which claim was made that the administrator and his wife purchased the premises at administrator's sale and at a price less than its real value. In the Common Pleas Court the judgment was for the defendants. On appeal this judgment was reversed and judgment entered that the sale made by the administrator should be set aside and held for naught. Due to the fact that the action was brought by creditors the question of reimbursement would not arise in the action as it then stood. This would come up later on a resale of the

property and distribution of the proceeds.

Reference is also made to the case of **Caldwell v Caldwell, 45 Oh St 512.** This case goes no farther than to hold that where the fiduciary purchases the property at his own sale, that a constructive fraud is perpetrated and the law permits the cestui que trust to come at his own option, and without showing actual injury, insist upon having the experiment of another sale.

Reference is also made to the case of **Riddle and Parker v Roll, 24 Oh St 572.** This case has already been referred to, affirming the Superior Court of Cincinnati in a case of the same title reported in Ohio Decisions, Reprint, 232. In the lower court interest had been allowed, and while the Supreme Court makes no reference to interest, yet the judgment of the lower court was affirmed.

As heretofore stated, we are in accord with the rule disallowing interest where no benefit would ██ inure to the holder of the dominant estate, but where, through an accounting or otherwise, a benefit has inured, interest should be allowed on the purchase price advanced, at least to the extent of such benefits. We shall not attempt to enumerate all the circumstances under which benefits might inure, but in the instant case benefits did inure in the way of rent charged in the account.

Under the facts in the instant case, it is our determination that the trial court was in error in not allowing interest on the purchase price advancement.

The third assignment of error complains that the trial court unlawfully sustained exceptions to the item of $1357.86 and interest thereon, listed as credits Nos. 43 and 44 in the original account.

This item was a payment made by Crager to Johnson and was evidenced by a check, regular in form, and would conclusively support the claim that this amount was paid by Crager to Johnson. The check was introduced in evidence as Accountant's Exhibit No. 22.

The trial court disallowed this claim for the announced reason that the evidence was very indefinite as to what it covered.

Both Crager and Johnson were interrogated. but neither could determine the details or what items went to make up the amount. Both very positively stated that it was in connection with the farm operations as they had no other deals during the period.

The only other payments made by Crager to Johnson, as shown on the account, were two items of $6.50 and $5.00. Both Crager and Johnson testified that Crager paid all bills and then made settlement with Johnson, dividing the profits on a 50-50 basis. It was Johnson's best judgment that the large item of $1357.86 represented the settlement after a three year operation. It was his claim that they made profits during the first three years and thereafter had losses. We think under the state of the record the ██ court could and should have allowed this claim, but nevertheless we hold against the claimed error as not being prejudicial.

This will be shown in our consideration of the fourth assignment of error.

Under the fourth assignment it is urged that the trial court was in error in sustaining exceptions against Oscar Crager's supplemental account.

In the supplemental account, Crager sought to have listed as credits the amount of the annual ██ payments, some nine in number, made by Johnson, as executor, to H. L. Stateler, the life tenant under the will of his ancestor. These payments were represented by checks from Johnson to H. L. Stateler, covering a period of nine years, starting with March 21, 1924, and ending May 9, 1932. Each of the checks represents annual payments of approximately $631.92, except the last one, which was $425.00. These payments represent a 6% calculation on the undivided one-half of the sale price of the farm, which, under the arrangement

between Crager and Johnson, the latter was supposed to own.

However, it was Johnson's representation to H. L. Stateler that the amount was the interest on the undivided one-half of the purchase price of the farm, for which Johnson held an unrecorded mortgage. The $425.00 payment was on a claimed reinvestment in government bonds.

Of course, this representation of Johnson to H. L. Stateler was untrue, but nevertheless Stateler received during this period of years as much, and probably more than he would have received had the sale in all respects been regular.

All debts having been paid against the estate, H. L. Stateler would be the sole recipient of the income. The fact that the sale was set aside would not wipe out the payments that were made by Johnson, but in this action or any other form of action, these payments must be taken into account.

H. L. Stateler is entitled to the full earning value of the residue of the estate. If he has received it, he can claim nothing more. If he has not received the full earning value, Johnson, the executor, would be liable.

The appellant Crager has been charged rental on the entire farm, and during the years of operation by himself and Johnson he accounted to Johnson and paid to him the profits on a 50-50 basis. This amount, of course, was not adequate to cover the remittances which Johnson paid annually to H. L. Stateler. Under this situation a proper accounting demands that the appellant Crager have credit for the amounts paid by Johnson to Stateler in a sufficient amount to reimburse him for his original advancements on the purchase price. For this reason the third assignment of error becomes unimportant.

Johnson's and Crager's operations were joint. The action was brought against them jointly. The title to the property was taken in the name of Crager, the action to set aside the deed was on the theory that Johnson was secretly a half owner. Either or both would be entitled to credit for any amounts that either or both paid through their joint ownership to the person entitled to the income. The fact that Johnson surreptitiously and unknown to either Crager or Stateler, paid the income on an improper basis would not alter the situation, so long as Stateler received what he was entitled to. The figures demonstrate that he received more than what would be properly coming to him from the proceeds of the farm. It certainly would be inequitable to charge Crager rental on the entire acreage and make no allowance for income received by Stateler from Johnson.

It is our conclusion that the trial court was in error in sustaining exceptions to appellant Crager's supplemental account.

The items set out in appellant's account which we have heretofore designated as miscellaneous, and being generally small items covering a number of years, would indicate that in the main they are mostly annual upkeep, which if not made would very rapidly decrease the value of the farm, but when made would do little more than maintain its then value. These items were not objected to and, of course, will be allowed in the account, as was done by the trial court.

Without making our statement in the form of an account, it is very quickly discernible that the credits allowed will exceed the advance payment on the purchase price, plus interest. Under this situation appellant ▬▬▬▬ would be entitled to recover the sum of $10,592.38 with interest at 6% from June 1, 1937, and no more. The extra amount which a strict accounting would show coming to Crager cannot be allowed, but is a loss which he and Johnson, either or both, must assume. Much of this amount may probably be traced to the annual remittances made by Johnson to H. L. Stateler, as income, which, in fact, was more than the income value of the one-half of the farm, but this excess amount being a voluntary payment could not be recovered back

by Johnson, nor could Crager be credited with such excess.

The excess might also be attributed to the calculated interest on the advance purchase payment, which is more than the determined rental value of the undivided half of the farm.

We have heretofore indicated that the allowing of interest is predicated upon the theory of a remuneration having been received by the parties entitled to the dominant estate. If no remuneration had been received, no interest would be allowed. It naturally follows that if the interest is in excess, then on accounting the interest charge would be reduced.

If counsel should in their entry desire to state the conclusions of the court in the form of an accounting, same may be set out in the journal entry with a deduction of all amounts in excess of the original advance purchase price.

We think we have arrived at a conclusion that comes as near doing exact justice to all parties as is possible. Mr. Crager will have returned to him the original investment. The life tenant, H. L. Stateler, has probably been paid the full value of his yearly income. The holder or holders of the fee estate will have it intact, the same as before the sale. They will also have the advantage of any increase in value, which may be problematical.

If sold at a less price, they will suffer the misfortune of exercising the option of having the sale set aside rather than have forced payment under the sale.

The defendant Edward N. Betts is entitled to have his mortgage note, together with interest, paid in full out of the adjudged amount coming to appellant Crager.

Entry may be drawn in accordance with the above findings.

HORNBECK, PJ. & GEIGER, J., concur.